IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

IN RE THE MATTER OF:

**BARBARA SOWARDS**,
*Petitioner/Appellant*,

*v.*

**TOMMY SOWARDS**,
*Respondent/Appellee.*

No. CV-22-0065-PR
Filed August 17, 2023

Appeal from the Superior Court in Maricopa County
The Honorable Suzanne Scheiner Marwil, Judge
No. FN2019-093369
**REVERSED IN PART, REMANDED**

Memorandum Decision of the Court of Appeals
Division One
No. 1 CA-CV 21-0098 FC
Filed Mar. 8, 2022
**AFFIRMED IN PART, REVERSED IN PART**

COUNSEL:

Stanley David Murray (argued), Attorney at Law, Scottsdale, Attorney for
Barbara Sowards

Steven H. Everts (argued), Udall Shumway PLC, Mesa, Attorneys for
Tommy Sowards

JUSTICE MONTGOMERY authored the Opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER and JUSTICES BOLICK, LOPEZ, BEENE, and KING joined.

———————————

JUSTICE MONTGOMERY, Opinion of the Court:

¶1        In this case we consider whether an injury settlement agreement between a married couple and a third party constitutes a valid and binding property settlement or postnuptial agreement. Because the settlement agreement in this case only addresses the disposition of the funds in question as between the third party and the husband and wife and does not address any division of the funds nor any respective rights as between the spouses, we hold that this settlement agreement is not a valid property settlement or postnuptial agreement.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

¶2        Tommy Sowards ("Husband") had open heart surgery to install a pacemaker. Barbara Sowards ("Wife") subsequently learned that the procedure was unnecessary. Consequently, Husband and Wife sued the doctor, hospital, and the pacemaker manufacturer for medical malpractice, claiming personal injury to Husband and loss of consortium on Wife's behalf. The couple also alleged injury to the marital estate. They eventually entered into a confidential settlement with the doctor and hospital for compensatory damages. After a trial, they were awarded $2 million in compensatory damages and $60 million in punitive damages against the pacemaker manufacturer. The trial court reduced the punitive damage award to $5.4 million.

¶3        Husband and Wife thereafter entered into a written settlement agreement (the "Agreement") with the pacemaker manufacturer, which each signed. The Agreement provided for a lump sum payment of $6.6 million that was made "to the MCML Trust Account" ("trust account") and specified that $2,383,673 was "attributable to personal injuries alleged by the Plaintiffs." The Agreement also required Husband and Wife to use $5.4 million of the settlement to fund a series of "Non-Qualified Periodic Payments" ("annuity payments") payable to "Settling Plaintiffs" per a detailed payment schedule.

¶4        With respect to the annuity payments, Paragraphs 2(a)–(d) and (h) of the Agreement provided that certain payments "will be paid to [Husband] for his lifetime."   In the event of his death, payments would then be made to Wife and, in the event of her death, to certain beneficiaries. Paragraphs 2(e)–(g) of the Agreement, though, provide that payments are made payable to "Settling Plaintiffs."   The payments were all deposited into a joint checking account.

¶5        Wife filed a petition for legal separation in 2019, which was converted into a dissolution proceeding.   After a trial, the court entered a dissolution decree in December 2020.   The court ruled that $2,383,673 of the settlement amount was Husband's sole and separate property and found that the remainder of the settlement was for punitive damages. Given that the language in the Agreement directed payments "to [Husband] for his lifetime" and after his death "to [Wife] for her lifetime" and then to designated beneficiaries, the court further found that the parties had agreed to the allocation of the settlement funds.   The court thus concluded that the settlement agreement took the payments "out of the community property realm."

¶6        On appeal, Wife argued that the punitive damages portion of the Agreement is a community asset that the trial court should have equitably divided.   The court of appeals disagreed and found that the Agreement was a valid postnuptial agreement[1] and affirmed the trial court's interpretation, concluding that its "net effect . . . was to give Husband the sole interest in the annuity payments during his life, with Wife having a right to receive them only upon his death."

¶7        We granted review to determine whether the court of appeals erred in interpreting the Agreement as a binding property settlement or postnuptial agreement.   We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.

---

[1] Husband did not raise this argument before the trial court.   Thus, Wife never had the opportunity to contest whether this was an accurate characterization of the settlement agreement, let alone whether it satisfied the requirements of a valid postnuptial agreement as set forth in *In re Harber's Estate*, 104 Ariz. 79, 88 (1969).   *See infra* II.A.

## II.  DISCUSSION

¶8        Postnuptial agreements are a product of the right to contract. *See In re Harber's Estate*, 104 Ariz. 79, 87 (1969) (acknowledging "that married couples should not be deprived of the right by contract to divide their property as they please, both presently and prospectively, assuming the contract is voluntary, free from fraud and is fair and equitable"); 5 Williston on Contracts § 11:7 (4th ed.) (discussing fact "that a husband and wife . . . may contract between themselves to settle and adjust all their property rights which have arisen out of the marital relationship").  We thus review issues regarding interpretation of a postnuptial agreement de novo.  *Andrews v. Blake*, 205 Ariz. 236, 240 ¶ 12 (2003) (stating that "[b]ecause interpretation of . . . contracts involves questions of law, we . . . review de novo any issues relating thereto").

¶9        Husband argues that the Agreement is a valid and binding postnuptial agreement because it was not made incident to a contemplated separation or divorce, it covered less than all of the property of the parties, it was drafted by an independent financial advisor, and the parties allegedly acknowledged in the Agreement that all payments were to be made to Husband only.  He contends that Wife's only interest in the annuity is contingent upon his death.

¶10        Wife argues that the Agreement is not a postnuptial agreement because neither party testified that it was intended as an agreement for distribution of a community asset and Husband admitted in his briefing before the court of appeals that the Agreement was not a property settlement agreement between Husband and Wife.  Additionally, she claims the Agreement is not a binding postnuptial agreement because it does not state that the annuity payments are Husband's sole and separate property and no language within the Agreement disclaims her interest in the community property.  She alleges that the Agreement's annuity payments "constituted non-probate transfers that terminated by operation of law upon dissolution of their marriage" under A.R.S. § 14-2804.[2]

---

[2] Our resolution does not require us to address § 14-2804.

## A. Postnuptial Agreements

¶11    To determine whether Husband and Wife intended the Agreement to function as a postnuptial agreement, we examine its language and consider its terms in the overall context of the Agreement. *Apollo Educ. Grp., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 250 Ariz. 408, 411 ¶ 11 (2021).    Furthermore, we give that language its "plain and ordinary meaning."    *Teufel v. Am. Fam. Mut. Ins. Co.*, 244 Ariz. 383, 385 ¶ 10 (2018).

¶12    As Husband notes, spouses may enter into a postnuptial agreement absent contemplation of separation or divorce.    *Harber, 104 Ariz. at 88*; *see also Austin*, 237 Ariz. at 206–07 ¶ 14 ("A postnuptial agreement is defined as '[a]n agreement entered into during marriage to define each spouse's property rights in the event of death *or* divorce.'" (alteration in original) (emphasis added) (quoting *Postnuptial Agreement*, Black's Law Dictionary (10th ed. 2014))).    Any such agreement must have been entered into "with full knowledge of the property involved and [the] rights therein."    *Harber*, 104 Ariz. at 88.

¶13    No party argues that the Agreement is not a valid contract. But the contract is between Husband and Wife as a couple and the settling defendants in a personal injury lawsuit.    Nowhere does the Agreement state that Husband and Wife have agreed to distribute their property between *each other* in a particular way.    Although the annuity payment schedule conditions payments to Wife on Husband's death, the Agreement states, "*Settling Plaintiffs* hereby acknowledge and understand that *Settling Plaintiffs will receive* Non-Qualified Periodic Payments *payable* as follows." (Emphasis added.)    This language indicates that Husband and Wife, as the settling plaintiffs, are to receive the payments under a schedule that simply lays out *how* the payments are to be made.    The Agreement never delineates Husband and Wife as individuals for purposes of an express agreement *between* the two of them and nowhere provides that the payments are the sole and separate property of Husband or that Wife has no interest in any of the payments.

¶14    Although we have not required specific language to create a valid postnuptial agreement, the agreement must clearly express the

spouses' intent to divide and delineate their separate property interests. For example, *Harber* illustrates the explicit division of property:

> And, Whereas the parties hereto [3] have mutually agreed while in health and strength, to divide their property, each releasing to the other his or her separate estate so that each party may deal with his or her separate estate as they desire.

104 Ariz. at 80. The language clearly expresses a mutual intent to "release" each spouse's interest in the other's property and render it separate. The parties in *Harber* also used explicit language setting forth the rights attendant to the separate property:

> Each of the parties hereto agrees that the property set over herein to the party of the second part, is to be and constitute her [separate] property and is hereby accepted by her as her just and equitable division of all the properties owned at this time by the parties hereto, with full power and authority on her part to sell, give away, dispose of by gift, conveyance or will, any and all of the said property to whomsoever she may, without the knowledge or consent on the part of the other party hereto.

*Id.* at 81.

¶15 In stark contrast to *Harber*, the Agreement here contains no language setting forth any terms or conditions that reflect an intent to allocate the settlement monies as between Husband and Wife. Nor does any provision support the inference that Husband and Wife contemplated making *any* agreement between each other. Thus, we find that the Agreement is not a valid postnuptial agreement and the court of appeals erred in concluding otherwise.

## B. Division Of Remaining Property

¶16 Because the Agreement is not a valid postnuptial agreement,

---

[3] "[T]he parties hereto" are the husband and wife expressly named at the beginning of the document. *Harber*, 104 Ariz. at 80.

we must consider how the settlement monies should be distributed. Generally, "[p]roperty acquired by either spouse during marriage is presumed to be community property." *Cockrill v. Cockrill*, 124 Ariz. 50, 52 (1979); *see* A.R.S. § 25-211(A)   "[T]he spouse seeking to overcome the presumption has the burden of establishing the separate character of the property by clear and convincing evidence."   *Cockrill*, 124 Ariz. at 52.

¶17        Husband has overcome the presumption that a significant part of the settlement is community property.   The Agreement states that $2,383,673 of the settlement amount is attributable to "personal physical injuries."   The only personal injuries of record are Husband's.   Therefore, as Wife concedes, this sum is Husband's sole and separate property.   *See Jurek v. Jurek*, 124 Ariz. 596, 598 (1980).

¶18        But Husband has not overcome the presumption that the remaining $4,216,327 is community property.   He claims that all of the Agreement's scheduled annuity payments were for punitive damages that are his sole and separate property.   But the Agreement does not support Husband's claim.

¶19        The only payment in the Agreement with a specified purpose is in paragraph one, which states that $2,383,673 is "not for economic damages or for punitive damages."   This necessarily leads to the conclusion that the remaining amount is for punitive and economic damages.   Yet, the Agreement fails to apportion any amount for Wife's separate loss of consortium claim, the community's loss of wages and medical expenses, or for punitive damages.   Additionally, Husband has not provided, beyond a general reference to the Agreement, a credible method for allocating the punitive damages award between the $5.4 million used for the annuity payments and the remaining $1.2 million.[4]

¶20        The fact that the Agreement makes Husband the payee is insufficient by itself to establish that the annuity payments are his sole and separate property.   *See Carroll v. Lee*, 148 Ariz. 10, 16 (1986) ("The presumption [of community property] applies to property acquired during marriage even though title is taken in the name of only one spouse.");

---

[4] In fact, the record is silent as to what happened with $1.2 million of the $6.6 million settlement payment.

*O'Hair v. O'Hair*, 109 Ariz. 236, 238 (1973) (explaining the "intention of the depositor" is controlling when determining whether funds are sole and separate property of a particular spouse); *McNabb v. Fisher*, 38 Ariz. 288, 295 (1931) (accord); *Neely v. Neely*, 115 Ariz. 47, 51 (App. 1977) (to same effect). Instead, the facts that: (1) Wife signed the Agreement; (2) annuity payments were made into a joint checking account; and (3) the Agreement bound Husband's use of the funds all serve to cast doubt on the argument that the annuity payments are Husband's sole and separate property. Finally, any compensatory damages awarded for loss of wages and medical costs incurred by the marital community are community property. *Jurek*, 124 Ariz. at 598.

¶21 Consequently, on the record before us, Husband has not overcome the presumption that the remaining $4,216,327 paid into the trust account was community property, nor has he shown that the community disclaimed an interest in the amount or that Wife gifted her interest. To the contrary, the record suggests that Husband and Wife treated the money as community property by initially depositing the lump sum into a trust account and then depositing distributions from the annuity the couple purchased into a joint checking account.

¶22 On remand, if the trial court is unable to determine whether it can allocate the annuity amount that is attributable to Husband's sole and separate property, Wife's sole and separate property, and community property, it should deem all of the annuity payments community property and proceed accordingly. *See Morris v. Morris*, 685 So. 2d 673, 676 (La. Ct. App. 1996) (discussing the fact that although "an award of damages can be classified as both community and separate property . . . without sufficient evidence to permit an equitable apportionment of the damages . . . the court is unable to adequately do so"); *Moreno v. Alejandro*, 775 S.W.2d 735, 737–38 (Tex. Ct. App. 1989) (finding trial court erred in granting summary judgment where portions of a recovery on an injured spouse's claim for personal injuries could have been community property, and the injured husband had failed to prove which portions were his separate property).

## III. CONCLUSION

¶23 For the foregoing reasons, we vacate the second sentence of paragraph one and vacate paragraphs six through ten of the court of

appeals' memorandum decision, and we reverse the trial court's determination that the annuity payments are not community property based on the settlement agreement and remand to the trial court. We decline both parties' requests for attorney fees under A.R.S. § 25-324.